IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CALVIN RAY ALLEN, 1149377,    )
          Petitioner,    )
              )
v.    )        No. 3:06-CV-0041-P
              )        ECF
NATHANIEL QUARTERMAN, Director,    )
TDCJ-CID,    )
          Respondent.    )

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and a standing order of reference from the district court. The Findings, Conclusions

and Recommendation of the Magistrate Judge are as follows:

**I.  Procedural Background**

Petitioner challenges his conviction for aggravated robbery with a deadly weapon. *State*

*v. Allen*, No. F-0247390-SU (291st Dist. Ct., Dallas County, Tex., Jan. 22, 2002). A jury found

him guilty and assessed punishment at forty years in prison. *Id.* His conviction was affirmed on

appeal. *Allen v. State*, No. 05-03-00196-CR (Tex. App. – Dallas, July 23, 2004, no pet.). He did

not timely file a petition for discretionary review.

On June 29, 2005, Petitioner filed a state application for writ of habeas corpus. *Ex parte*

*Allen*, No. 62,753-01. On November 23, 2005, the Court of Criminal Appeals denied the petition

without written order on the findings of the trial court. *Id.*

On January 6, 2006, Petitioner filed this federal petition for writ of habeas corpus. He

argues:

(1)    the trial court abused its discretion when it:

    (a)    discharged a juror as disabled and continued the trial with only eleven jurors;

    (b)    denied Petitioner's motion to suppress his statement; and

    (c)    admitted state's exhibit No. 75;

(2)    he received ineffective assistance of counsel when counsel:

    (a)    failed to object to the state's comment on Petitioner's failure to testify;

    (b)    failed to object to an improper jury charge;

    (c)    failed to object to the prosecutor's personal opinion and misstatement of the law of parties during closing argument;

    (d)    failed to raise the argument that Petitioner's statement was improperly obtained;

    (e)    failed to object to the absence of Petitioner's original statement;

    (f)    failed to use favorable evidence and available evidence to advance a viable defense;

    (g)    failed to object to the trial court's leading questions to a juror which led to her removal from the panel; and

(3)    Article 38.22 of the Texas Code of Criminal Procedure is unconstitutionally ambiguous and is being applied in a manner not intended by the legislature.

On April 13, 2006, Respondent filed his answer. On June 7, 2006, Petitioner filed a reply. The Court now finds the petition should be denied.

## II.  Factual Background

The following factual background is taken from the opinion of the Fifth District Court of

Appeals.

Jesus Cervantes owns a tire shop called Wheels and Relateds.

* * * *

Cervantes testified that he, [his brother-in-law Jorge] Reyes, and [a machine service man named Randel] Edwards were present when a white four-door Chevrolet Caprice drove into the bay of the tire shop. Three black males left the vehicle. One of them asked Cervantes if he could break a $100 bill and handed it to him. As Cervantes was examining the money, the man pulled a gun and pointed it at his chest. He ordered Cervantes to "give me the money." Cervantes grabbed the gun and started fighting for it. They fell on the floor and continued struggling. The man hit Cervantes on the head with the gun, and stabbed him on the shoulder and back. He robbed Cervantes of $2,200.00. . . . .

Edwards testified that when he walked into the shop to repair a tire-changing machine, he saw three men in the office, along with Cervantes and Reyes. He walked by the office back to the machine, sat down and was putting a part on the machine when he was attacked. The man jumped on him and pinned him to the floor. He fought back and tried to get away, but was unsuccessful. When Edwards tried to stab his attacker with a screwdriver, the man reached up on a shelf and got a crowbar. He started beating Edwards with it and Edwards went limp. The next thing he knew, his attacker pulled him up off the floor and dragged him into a bathroom or closet. On the way, he saw another man on top of Cervantes beating him in the face with a pistol. When Edwards got to the closet, he was "stuffed in there face down." . . . Because of the beating he received, Edwards spent five days in the hospital with compressed skull fractures. He also lost part of an ear as a result of his injuries. Edwards testified that his attacker took his wallet, which contained approximately $120.00

Officer Monahan received a dispatch for a robbery in progress. . . . The victims gave Monahan a description of the vehicle used and the officer broadcast it over the police radio. . . .

* * * *

Officer St. Clair responded to the dispatch and was traveling toward the tire shop when he observed a vehicle that matched the description given by Monahan. . . . St. Clair turned on his emergency lights and the car slowed and eventually stopped. Three black males got out of the white Caprice and began running. . . . One [of the men] had a gun in his hand, and two had clothing and money in their hands. . . . The three suspects eventually split up, with two heading south and one heading north. The officers followed the man heading north. They lost sight of the suspect for approximately 30 seconds to one minute when he ran between some houses. Then St. Clair head someone say "over

here, over here," and he saw the man they were chasing.  When the officers turned the flashlight on him, the suspect started running again . . . .  St. Clair testified that the man, who he identified in court as appellant, had cuts, scratches and blood on his hands when arrested.  Officer Sigala, St. Clair's partner, stated that he did a patdown of appellant and found $317.00 crammed in his right front pant's pocket.

\* \* \* \*

Detective Williams testified that he was a fingerprint expert.  When he took prints from the vehicle involved in the robbery, he matched three prints with those of appellant. . . .  He found a Winchester 9 mm Luger cartridge casing on the front passenger floorboard.  He also discovered a blood-stained tire iron.  Beneath the driver's seat was a blue steel Smith & Wesson with a 4 in. barrel.  It contained five live rounds. . . .

\* \* \* \*

Officer Swain testified that on the evening of the robbery, appellant was brought to his office for an interview.  Swain took appellant into a small room and advised him of his *Miranda* rights.  Appellant told him he understood his rights and that he wanted to talk about the robbery.  Appellant's statement follows in toto:

My name is Calvin Allen.  I can read and write the English language.  I am giving this statement to Det. M.R. Swain 5215, and he is writing it for me.  Earlier today, I was at Tron's house, when Timothy came and picked us up around one o'clock.  We went to get something to eat and then by the grocery store.  We went back to Tron's house and sat around for awhile.  We then left again and drove to Oak Cliff.  We went from Oak Cliff to my cleaners to pick up some clothes.  My cleaners is on Buckner near the tire store.  We left the cleaners and were talking about our hard times.  We passed the tire shop and saw only one guy standing by the door, like he was getting ready to close.  We decided spur of the minute, to strong arm this guy.  We made a U-turn and pulled into the parking lot.  We got out and looked at the rims that were outside, to try and catch him off guard.  We then pushed the guy into the store and realized there were two more people in the store.  I started fighting with one guy and Timothy and Tron were with the other guys.  Sometime during this, Tron pulled the car into the work area and pulled down the bay door.  Right after this, the fight was over and we left.  The police got on us really quick.  We stopped the car somewhere near Prairie Creek.  I got out and ran, but gave myself up after awhile.  During the fight at the store, things started going bad and I asked the guy to let me go and I would let him go, but he wouldn't.  I've known Tron for one month.  I know his first name as Corey.  I didn't know any guns were going to be used until after they were brought out because this was supposed to be a strong arm.

*Allen v. State*, No. 05-03-00196-CR at 1-4.

<u>Findings, Conclusions and Recommendation</u>
<u>of the United States Magistrate Judge</u>          Page -4-

## III.  Discussion

**1.      Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the

AEDPA), 28 U.S.C. § 2254 provide:

(d)      An application for writ of habeas corpus on behalf of a person in custody pursuant
to the judgment of a state court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings unless the adjudication
of the claim –

(1)      resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the

writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the

United States Supreme Court on a question of law or if the state court decides a case differently

from the United States Supreme Court on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that

principle to the facts of the prisoner's case.  *Id.*

This amendment applies to all federal habeas corpus petitions which are adjudicated on

the merits in state court after April 24, 1996.  *See Lindh*, 521 U.S. at 336.  The petition in this

case is subject to review under the AEDPA.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -5-

2.      **Procedural Bar**

Respondent argues the following claims are procedurally barred: (1) Petitioner's claims

that the trial court abused its discretion; and (2) Petitioner's claims that he received ineffective

assistance of counsel because counsel failed to object to an improper jury charge and failed to

object to the prosecutor's misstatement of the law of parties.  If a state court has declined to

address a prisoner's federal claims because the prisoner failed to meet a state procedural

requirement, such as filing a petition for discretionary review, the procedural bar applies.  *See*

*Coleman v. Thompson*, 501 U.S. 722, 729-31 (1991).  The general rule that a state court must

explicitly apply a procedural bar to preclude federal review does not apply when a petitioner has

not presented his claims to the highest court of the state and the state court to which he would be

required to present his claims would now find the claim procedurally barred.  *Id*.

The records reflects that Petitioner failed to raise these claims on a petition for

discretionary review or in his state habeas application.  Accordingly, the Texas Court of

Criminal Appeals has not reviewed these claims.  These claims cannot be reviewed by a state

court because it is too late to file a petition for discretionary review.  If this Court were to require

Petitioner to return to state court to exhaust these claims, they would be subject to dismissal.

Federal courts ordinarily will not review questions of federal law when such a state procedural

bar exists.

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a

petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result

of the alleged violation of federal law; or (2) that failure to consider the claims will result in a

"fundamental miscarriage of justice."  *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (citing

*Coleman*, 501 U.S. at 750).  Petitioner has not shown sufficient cause for his failure to present

these claims to the Texas Court of Criminal Appeals.

Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice.

This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a

factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d

635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).  To establish

the required probability that he was actually innocent, a petitioner must support his allegations

with new, reliable evidence that was not presented at trial and must show it was more likely than

not that no reasonable juror would have convicted him in light of the new evidence.  *Id.* (citing

*Schlup*, 513 U.S. at 327).  Petitioner has presented no new, reliable evidence showing that it was

more likely than not that no reasonable juror would have convicted him.  Petitioner has not

overcome the state procedural bar.  Accordingly, the procedural default doctrine bars federal

habeas relief on these claims.

**3.      Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel.  To sustain a claim of

ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was

deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive

Petitioner of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the

Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and

"every effort [must] be made to eliminate the distorting effects of hindsight."  *Strickland*, 466

U.S. at 689.  Courts, therefore, must "indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance."  *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice.  To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors."  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694).  "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong."  *Id*.  "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'"  *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**(a) Comment on failure to testify**

Petitioner argues his counsel was ineffective because he failed to object to the state's improper comment about his failure to testify.  Petitioner argues the prosecutor stated, "Mr. Allen had a chance to testify, but he didn't."  (Compl. Mem. at Issue Four).

On state habeas review, Petitioner's counsel submitted an affidavit stating that she was unable to locate this alleged statement in the record.  (*Ex parte Allen*, No. 62,753-01 at 10).  Likewise, the Court has reviewed the closing arguments and this alleged statement was not found.  The Court finds Petitioner's claim should be denied.

**(b) Failure to object**

Petitioner argues his counsel was ineffective for failing to object to the prosecutor's personal opinion during closing arguments.  In his closing arguments, the prosecutor stated Petitioner was guilty of the offense.  He also referred to a picture of Petitioner's hands from the night of the incident and stated:

> That is a puncture wound.  It's not a cut.  It's not a scrape.  It's a puncture wound.  Why is that important?  Because Randel Edwards when he was fighting for his life, he grabbed a screwdriver and poked at the person that was attacking him.  Doesn't know if he hit him or not.  Calvin Allen was the one that was attacking him.

(Trial Tr. Vol. 5 at 6).

Under Texas law, a proper jury argument includes: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *Cobble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993). In this case, Petitioner's written statement to the police stated that he did not carry a gun, but that his two accomplices did carry guns. The prosecutor argued that since Petitioner did not carry a gun, he was the assailant who used the crowbar, and the injuries to Petitioner's hands were caused when the victim attempted to fight back. The prosecutor used a summation and reasonable inferences from the evidence to argue that Petitioner was guilty and that he wielded the crowbar. Petitioner has failed to show his counsel was deficient and/or that he was prejudiced by his counsel's failure to object.

### (c) Admission of statement

Petitioner argues his counsel was ineffective because she failed to raise the argument that his written statement was obtained improperly. The record, however, shows that counsel did challenge the admission of this statement. On August 12, 2002, defense counsel filed a motion to suppress the statement pursuant to *Jackson v. Denno*. (Clerk's Record at 21-23). On January 21, 2003, the trial court held a hearing regarding the voluntariness of Petitioner's plea. (Trial Tr. Vol. 2). During the hearing, defense counsel cross-examined Detective Swain regarding his procedures for taking a statement, and the absence of a witness signature on the third page of Petitioner's statement. (*Id*. at 13-19). The trial court, however, denied the motion to suppress. (*Id*. at 20-21). Finally, when the statement was introduced during trial, defense counsel objected to its admission, but was overruled by the trial court. (Trial Tr. Vol. 4 at 126-27). Petitioner's

claim is without merit and should be denied.

### (d) Petitioner's original statement

Petitioner claims his attorney was ineffective because she failed to object to the absence of Petitioner's original statement.  Petitioner states he told his counsel that the statement produced at trial was factually inconsistent with his original statement.

The record reflects that the court conducted a hearing prior to trial to determine the voluntariness of Petitioner's statement.  At that hearing, a copy of Petitioner's statement was entered into the record.  (Trial Tr. Vol. 2 at 12-13).  During trial, however, the original was entered into evidence.  (Trial Tr. Vol. 4 at 126).

Further, on state habeas review, Petitioner's counsel submitted an affidavit stating:

3.   I recall that defense counsel had a hearing on the admissibility of Mr. Allen's statement before the trial began.  Judge Hawk determined that despite a missing signature on the back page of that confession, the proper procedures were followed and that the statement was admissible.  Detective Swain testified that the copy presented in court was the original copy of this statement.  See Exhibit #4.

4.   The statement that Judge Hawk allowed into evidence had original signatures on it.  The officer testified that this statement was the original.  No videotape or audiotape was taken of the statement.  See Exhibit #4.

In the sub rosa hearing on the defendant's statement, I asked the detective if there was another copy where the defendant had signed on the back.  By referring to the back of the statement, I was referring to page three of the statement.  The detective stated there might be a page three signature in the lead detective's file as he might have mixed up the copies.  See Exhibit #5.  Judge Hawk allowed the defendant's statement in over defense's objection.

5.   The defense was never able to find any other statement signed by the defendant other than the one produced in court.

*Ex parte Allen*, No. 62,753-01 at 10-11.

Petitioner has failed to show that his counsel was deficient and/or that he was prejudiced

by counsel's failure to argue that the statement was not Petitioner's original statement.

### (e)  Failure to use available evidence

Petitioner argues his counsel was ineffective because she failed to use favorable and available evidence to advance a viable defense.  Specifically, Petitioner argues his counsel should have admitted his wife's tax returns to bolster her testimony that she gave Petitioner $300 prior to his arrest.  Petitioner states this testimony would show that the money found in his pocket came from his wife and not from the robbery victims.

On state habeas review, defense counsel submitted an affidavit stating:

> 6.      The defense had Mr. Allen's wife testify.  Her testimony was not impeached while she was on the stand or later.  Her tax returns were not relevant to the issue of whether she gave Mr. Allen this money or not.  Her testimony regarding her actions was the best evidence that we had on this subject.

*Ex parte Allen*, No. 62,753-01 at 11.

The Court finds Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy.  *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Petitioner's claim should be denied.

### (f)  Failure to object to questions

Petitioner states his counsel was ineffective for failing to object to the trial court's questioning of a juror, which led the juror's removal from the panel.  The record shows that the trial court questioned the juror regarding her disability.  (Trial Tr. Vol. 4 at 53-58).  The juror stated that she had arthritis and was in a lot of pain from sitting through the trial.  The juror asked to be excused stating she could not concentrate due to the pain, and she could not take her pain medication because it would make her fall asleep.  (*Id*.).  Petitioner states no basis for defense counsel to object to the trial court's questioning of this juror.  Counsel is not required to

file frivolous motions.  *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).  The Court

finds Petitioner's claim should be denied.

4.      **Texas Criminal Code**

Petitioner states that article 38.22 of the Texas Code of Criminal Procedure is

unconstitutionally ambiguous and was applied in a way not intended by the legislature.  Article

38.22 controls the admissibility of statements.  Section 1 clearly defines a written statement of an

accused as "a statement signed by the accused or a statement made by the accused in his own

handwriting or, if the accused is unable to write, a statement bearing his mark, when the mark

has been witnessed by a person other than a peace officer."  TEX. CODE CRIM. PROC. art. 38.22 §

1 (West 2002).  Petitioner does not explain why this statute is unconstitutionally vague.

Petitioner's claim is conclusory and should be denied.  *See Ross v. Estelle*, 694 F.2d 1008, 1012

(5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in

habeas proceedings).

5.      **Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a

constitutionally protected interest.  Accordingly, the state courts' determination to deny relief is

not contrary to or does not involve an unreasonable application of clearly established federal law

and is not based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceedings.

**<u>RECOMMENDATION</u>**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 be DENIED.

<u>**Findings, Conclusions and Recommendation**</u>
<u>**of the United States Magistrate Judge**</u>          Page -12-

Signed this 19th day of March, 2007.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

The United States District Clerk shall serve a copy of these findings and recommendations on the parties.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendations must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings and recommendations to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  The failure to file such written objections to these proposed findings and recommendations shall bar that party from a *de novo* determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, the failure to file written objections to proposed findings and recommendations within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).